UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LIN TELEVISION CORP. d/b/a
WIVB-TV/WNLO-TV,

                               Plaintiff,
   v.                                                **DECISION AND ORDER**
                                                                14-CV-1048S

NATIONAL ASSOCIATION OF BROADCAST
EMPLOYEES AND TECHNICIANS –
COMMUNCATIONS WORKERS OF
AMERICA, AFL-CIO, et al.,

                               Defendants.

## I. INTRODUCTION

Plaintiff LIN Television Corporation d/b/a WIVB-TV/WNLO-TV commenced this action against Defendants National Association of Broadcast Employees and Technicians - Communications Workers of America, AFL-CIO and National Association of Broadcast Employees and Technicians - Communications Workers of America, Local 25, seeking to vacate a labor arbitration award under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.  (Docket No. 1.)  Defendants filed a counter-claim, seeking enforcement of the arbitration award and attorney's fees.  (Docket No. 8.)  Currently pending before this Court are the parties' cross motions for summary judgment.  (Docket Nos. 26, 31.)  For the following reasons, Defendants' motion is granted and Plaintiff's motion is denied.

## II. BACKGROUND[1]

Timothy Flynn was employed by the Plaintiff television station in Buffalo, NY, where he worked as a television technician for more than 21 years.  During that period, Flynn's colleagues were aware that Flynn suffered from mental health issues, including a prior threat of suicide.  However, Flynn had not been violent toward others and had no record of workplace discipline.

On July 23, 2013, Flynn was recorded making a number of threats to his immediate supervisor and the supervisor's family, including threats on his supervisor's life.  The supervisor was not present during the threats.  Employees who were either present or later heard the recording, including the supervisor, did not deem the threats to be serious, but instead thought Flynn was having a bad day.  The following day, Flynn admitted to making the remarks and apologized.  He was initially suspended from employment, and later terminated on the grounds that he posed a serious safety concern.  Flynn now maintains that he was blacked out during this period and has no recollection of what occurred.

Defendants grieved the discharge pursuant to the parties' collective bargaining agreement ("CBA").  Article 8.0 of the CBA states that Plaintiff may "discipline or discharge an employee only for just cause."  Article 8.0(d) states:

> Any disciplinary action taken by the company against an Employee under Section 8.0 will be arbitrable and will be processed under Article 15.  The parties agree that the arbitrator in such cases shall be empowered to determine an appropriate remedy if he sustains the disciplined employee's

---

[1] The facts and procedural background are taken from Docket No. 1-1, Arbitration Opinion and Award dated December 2, 2014, Docket No. 26-1, Defendants' Rule 56.1 Statement, and Docket No. 31-2, Plaintiff's Rule 56.1 Statement.  With respect to the facts determined in the arbitration award, "the Supreme Court has unambiguously stated that a reviewing court is bound by . . . the arbitrator's factual findings."  Int'l Bhd. of Elec. Workers v. Niagara Mohawk Power Corp., 143 F.3d 704, 715 (2d Cir. 1998) ("Niagara Mohawk I") (citing Misco, 484 U.S. at 37-38).

2

grievance.

The parties stipulated that there were two issues to be decided by the arbitrator: (1) "Was [Flynn] terminated for just cause?" and (2) "If not, what shall the remedy be?" The arbitrator issued his Opinion and Award on December 2, 2014. In it, the arbitrator carefully reviewed the testimony of witnesses who testified at the arbitration hearing regarding the events leading to Flynn's discharge, the arguments made by the parties, and relevant precedent.

The arbitrator found that, in light of the totality of the mitigating factors present in the case, Plaintiff was without just cause to discharge Flynn under the CBA. Specifically, the arbitrator relied on the facts that the target of the threats was not present during Flynn's remarks, Flynn had no weapons, the relative lack of gravity Flynn's colleagues attributed to the threat, Flynn's unblemished prior work record and lack of a propensity for violence, the minimal interference that Flynn's mental illness had previously had with his ability to do his job, and Flynn's length of service. The arbitrator found that the termination should be converted to a suspension without pay through the date of the award. The arbitrator did not order Flynn's immediate return to work. Instead, although Flynn could apply for Short-Term Disability Leave following the award, he could not return to work until he had received a positive evaluation from a psychiatrist mutually agreed by the parties. If the evaluation was not favorable, Flynn could be summarily discharged.

Defendants have moved for summary judgment confirming the award. Plaintiff filed a cross-motion for summary judgment, seeking to vacate the award on the grounds that it does not draw its essence from the CBA, and that it violates a public policy for

workplace safety.

### III. DISCUSSION

"A motion for summary judgment may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010).  A court's function on a summary judgment motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Kaytor, 609 F.3d at 545 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).  "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2003) *cert. denied*, 540 U.S. 811 (2003) (quoting Anderson, 477 U.S. at 248).  Where both parties move for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." Morales v. Quintel Entm't, 249 F.3d 115, 121 (2d Cir. 2001).

1. Special Deference Must Be Given to Labor Arbitration Awards

As the Second Circuit recently re-affirmed:

"[A] federal court's review of labor arbitration awards is narrowly circumscribed and highly deferential—indeed, among the most deferential in the law." Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n, 820 F.3d 527, 532 (2d Cir. 2016) ("NFL").  A court is "not authorized to review the arbitrator's decision on the merits"; its role is simply to determine "whether the arbitrator acted within the scope of his authority as defined by the collective bargaining agreement." Id. at 536.  Thus, as long as "the arbitrator was even arguably construing or applying the contract and acting within the scope of his authority and did not ignore the plain language of the contract," the award should ordinarily be

confirmed. Id. (internal quotation marks omitted).

N.Y. City & Vicinity Dist. Council of United Bhd. of Carpenters & Joiners of Am. v. Ass'n of Wall-Ceiling & Carpentry Indus. of N.Y., Inc., 826 F.3d 611, 618 (2d Cir. 2016). Therefore, a court should vacate an award only where it "contradicts an express and unambiguous term of the contract or . . . so far departs from the terms of the agreement that it is not even arguably derived from the contract." United Bhd. of Carpenters v. Tappan Zee Constructors, LLC, 804 F.3d 270, 275 (2d Cir. 2015) (internal quotation omitted). Courts may not "reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 36, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987) ("Misco"). When a Court exceeds this limited role, "it usurps a function which . . . is entrusted to the arbitration tribunal," Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 510, 121 S. Ct. 1724, 1728, 149 L. Ed. 2d 740 (2001), and frustrates Congress's "preference for private settlement of labor disputes," Misco, 484 U.S. at 37 (quotations omitted).

In addition to the instances where an award does not "draw[ ] its essence from the collective bargaining agreement" but reflects instead "the arbitrator's own brand of industrial justice," NFL, 820 F.3d at 536 (internal quotation marks omitted), "[t]he Supreme Court has also recognized a second circumstance warranting vacatur of a labor arbitration award: '[i]f the contract as interpreted by [the arbitrator] violates some explicit public policy,' such as 'obedience to judicial orders.'" N.Y. City & Vicinity Dist. Council of United Bhd. of Carpenters & Joiners of Am., 826 F.3d at 618 (quoting W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber, Cork, Linoleum &

Plastic Workers, 461 U.S. 757, 766, 103 S. Ct. 2177, 76 L. Ed. 2d 298 (1983)).  The Second Circuit has construed the public policy ground for vacatur to be "extremely limited."  Local 97, Int'l Bhd. of Elec. Workers v. Niagara Mohawk Power Corp., 196 F.3d 117, 125 (2d Cir. 1999) ("Niagara Mohawk II").  Accordingly, a court's task in applying that principle is limited to determining "whether the award itself, as contrasted with the reasoning that underlies the award, creates an explicit conflict with other laws and legal precedents and thus clearly violates an identifiable public policy."  Id. (alterations and internal quotation marks omitted).

"The showing required to avoid summary confirmation of an arbitration award is high, and a party moving to vacate the award has the burden of proof."  See Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d 9, 12 (2d Cir. 1997) (internal citations and punctuation omitted).  Plaintiff does not meet this high burden.

   *a. The Award Draws its Essence from the CBA*

Plaintiff contends that the award does not draw its essence from the CBA because the arbitrator did not make a just cause determination, and because the arbitrator exceeded the scope of his authority under the CBA by directing Flynn to apply for Short-Term Disability.  However, the arbitration award clearly states that there was not just cause to discharge Flynn in the matter employed by Plaintiff, and Article 8.0(d) of the CBA unambiguously authorizes the arbitrator to shape an "appropriate remedy." Moreover, the CBA makes no limitations on the power to shape a remedy:  "The parties agree that the arbitrator in such cases shall be empowered to determine an appropriate remedy if he sustains the disciplined employee's grievance."  Plaintiff's motion,

therefore, urges this Court to overturn the arbitrator's interpretation of the CBA.

An award should be overturned where "the arbitrator '*must* have based his award on some body of thought, or feeling, or policy, or law that is outside the contract." In re Marine Pollution Serv., Inc., 857 F.2d 91, 94 (2d Cir. 1988) (emphasis in original) (quoting Ethyl Corp. v. United Steelworkers, 768 F.2d 180, 184-85 (7th Cir. 1985)). However, "Courts are not empowered to reexamine the merits of an arbitration award, even though the parties to the agreement may argue that the award arises out of a misinterpretation of the contract" as "[t]he federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." Niagara Mohawk I, 143 F.3d at 714 (internal quotation marks and citations omitted). A court is to "inquire only as to whether the arbitrator acted within the scope of his authority as defined by the collective bargaining agreement." NFL, 820 F.3d at 536. Giving appropriate deference to the broad wording of Article 8.0(d) of the CBA, this Court finds that the award is "plausibly grounded in the parties' agreement." See Wackenhut Corp. v. Amalgamated Local 515, 126 F.3d 29, 32 (2d Cir. 1997). Accordingly, the arbitrator acted within the scope of his authority and there is no basis to overturn the award.

*b. The Award Does Not Violate Public Policy for Workplace Safety*

Plaintiff further contends that the award, which would allow Flynn to return to work following a positive mental health evaluation, must be vacated because it violates a public policy for workplace safety. Courts may vacate an award if it conflicts with an explicit and well-defined public policy. See Misco, 484 U.S. at 43; E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17, 531 U.S. 57, 62-63, 121 S. Ct. 462, 148

L. Ed. 2d 354 (2000); Newsday, Inc. v. Long Island Typographical Union, 915 F.2d 840, 844 (2d Cir. 1990). However, the public policy asserted "must be well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." W.R. Grace & Co., 461 U.S. at 766 (quotations omitted). The public policy exception is "extremely limited, and the party seeking the benefit of the exception must establish its existence." Niagara Mohawk II, 196 F.3d at 125.

In support of its argument, Plaintiff relies primarily on G.B. Goldman Paper Co. v. United Paperworkers Int'l Union, Local 286, 957 F. Supp. 607 (E.D. Pa. 1997). In that case, as here, an employer moved to vacate an arbitration award reinstating an employee who had harassed, intimidated, and threatened a co-worker. The Eastern District of Pennsylvania held "safety in the work environment" to constitute a "well-defined and dominant public policy," id. at 618, and set forth the following test for evaluating whether an award violates that policy:

> In addressing whether to vacate an arbitration award on workplace safety public policy grounds, a court must first accept the facts as found by the arbitrator to gauge how dangerous the grievant-in-question is. Secondly, the court must then determine on the facts of that case the chance of harm that the grievant might pose to other people in the workplace if reinstated.

Id. at 620. Applying the test to the facts found by the arbitrator, the court found that, despite the arbitrator's conclusion that the employee had purposefully menaced another employee with a truck and had harassed and threatened him directly, "the risk of harm to others [was not] so significant that the reinstatement of [the employee] would violate the public policy of workplace safety." Id. at 621.

Assuming Plaintiff is correct and that workplace safety is considered a "well-

defined and dominant public policy" in this Circuit,[2] the test set forth in G.B. Goldman Paper Co. would support confirmation of the award in this case as well. Based on the facts as determined by the arbitrator, "[Flynn's] records do not demonstrate a propensity or risk for violence towards others," and Plaintiff failed to "provide[ ] any medical testimony or records during the hearing that would paint [Flynn] as violent or incapable of performing his job functions." (Docket No 1-1 at 15, 20.) Owing to the strong deference due to an arbitrator's findings, "improvident, even silly[ ] factfinding" by an arbitrator is insufficient to overturn an award. Misco, 484 U.S. at 39. This Court defers to the arbitrator's finding that Flynn is not a danger to others, and that the "chance of harm that the grievant might pose to other people in the workplace" is minimal. See G.B. Goldman Paper Co., 957 F. Supp. at 620.

Plaintiff also contends that it is counter to public policy to compel an employer to reinstate an employee who may expose the employer to liability. This argument, however, would invalidate reinstatement of virtually any employee found to violate basic safety protocol. The Supreme Court has previously upheld the reinstatement of a truck driver who twice tested positive for marijuana, United Mine Workers, 531 U.S. at 65, and the Second Circuit has upheld the reinstatement of an employee who reported for work intoxicated and carrying a gun, First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Emps. Union Local 338, 118 F.3d 892, 894, 898 (2d Cir. 1997), regardless of the employer's potential exposure to liability. There is thus no error in

---

[2] The only Second Circuit case construing G.B. Goldman Paper Co. concluded that "[a]lthough . . . OSHA, and employers in general, are concerned about workplace violence, . . . no agency has implemented any specific legal regulations governing the issue," and, therefore, the decision to reinstate an employee who had made threats of violence "violated no specific provision of any law or regulation." N.Y. State Elec. & Gas Corp. v. Sys. Council U-7 of Int'l Bhd. of Elec. Workers, 328 F. Supp. 2d 313, 317 (N.D.N.Y. 2004) (confirming arbitration award). This follows the Supreme Court's warning that "formulation of public policy based only on general considerations of supposed public interests is not the sort that permits a court to set aside an arbitration award." Misco, 484 U.S. at 44 (quotations omitted).

confirming the reinstatement of Flynn after a positive mental health evaluation, and the award is not a violation of public policy.

2. <u>The Award is Confirmed</u>

Confirmation of a labor arbitration award under LMRA § 301 is "a summary proceeding that merely makes what is already a final arbitration award a judgment of the Court."  <u>New York City Dist. Council of Carpenters Pension Fund v. E. Millennium Const., Inc.</u>, No. 03 CIV. 5122, 2003 WL 22773355, at *2 (S.D.N.Y. Nov. 21, 2003) (citing <u>Florasynth, Inc. v. Pickholz</u>, 750 F.2d 171, 176 (2d Cir. 1984)).  If the party opposing confirmation fails to persuade the court that the award should be vacated or modified, the award must be confirmed.  See <u>Niagara Mohawk II</u>, 196 F.3d at 125.  Plaintiff has failed to demonstrate that the award must be vacated, and is equally unable to meet the high burden of blocking Defendants' motion to confirm.  Accordingly, that motion is granted.[3]

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is denied, Defendants' motion is granted, and the award is confirmed.

---

[3] Defendants' counterclaim seeks attorney's fees (<u>see</u> Docket No. 8); the motion for summary judgment does not explicitly request them.  To the extent that Defendants intended to seek fees through this motion, that request is denied.  Attorney's fees cannot ordinarily be recovered in a federal action "in the absence of statutory authority, and . . .Section 301 of the LMRA . . . [does not] provide for attorney's fees in actions to confirm an arbitration award."  See <u>Carpenters Pension Fund</u>, 2003 WL 22773355, at *2 (citing <u>Int'l Chem. Workers Union v. BASF Wyandotte Corp.</u>, 774 F.2d 43, 47 (2d Cir. 1985)).

## V. ORDERS

IT HEREBY IS ORDERED that Defendants' Motion for Summary Judgment (Docket No. 26) is GRANTED;

FURTHER, that Plaintiff's Motion for Summary Judgment (Docket No. 31) is DENIED;

FURTHER, that the Arbitration Award is confirmed;

FURTHER, that the Clerk of Court is directed to close this case.

SO ORDERED.

Dated: November 6, 2016
Buffalo, New York

                                              <u>/s/William M. Skretny</u>
                                              WILLIAM M. SKRETNY
                                             United States District Judge